UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs                                                                                      Case No: 09-20223
                                                                            Honorable Victoria A. Roberts
D-3 ALAN SILBER,
D-4 WILLIAM REEVES,

    Defendants.
_____/

## OPINION AND ORDER

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

On December 10, 2009, the Government filed a First Superseding Indictment against Defendant Dr. Alan Silber. Dr. Silber is charged with: (1) Health Care Fraud Conspiracy, in violation of 18 U.S.C. §1349 (Count I); and (2) Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 2 (Counts II-VII).

Trial is scheduled for March 25, 2010.

On March 19, 2010, the Government filed a Trial Brief that includes potential legal issues that could arise during trial. (Doc. #126).

Briefing was completed on March 24, 2010, and the Court heard oral argument.

**II.    APPLICABLE LAW AND ANALYSIS**

    **A.    The Government's Intent to Introduce Dr. Silber's Statements Through the Testimony of FBI Agents, if Dr. Silber Testifies at Trial, or Offers any Evidence Inconsistent with His Statements**

Dr. Silber was interviewed by the FBI on November 27, 2007. If Dr. Silber

1

testifies at trial, or offers evidence that is inconsistent with the statements he provided FBI agents on November 27th, the Government intends to introduce Dr. Silber's statements.

The statements were provided pursuant to a letter from the Government dated October 29, 2007:

. . .

> (2) Except as otherwise specified in this letter, no statement made by you or your client during this proffer discussion will be offered against your client in the government's case-in-chief in any criminal prosecution of your client for the matters currently under investigation.
>
> (3) If your client is prosecuted, the government may use your client's statements in cross-examining your client, and to rebut any evidence offered by your client that is inconsistent with the statements made during this discussion.

The Government may introduce Dr. Silber's statements through the testimony of agents who were present at the interview on November 27, 2007. *See* Fed. R. Evid. 801(d)(2)(A): "A statement is not hearsay if[] [t]he statement is offered against the party and is the party's own statement, in either an individual or representative capacity[.]"

Based on the October 29, 2007 letter, the Court finds the Government may introduce Dr. Silber's statements: (1) on cross-examination of Dr. Silber (if he testifies); (2) if defense counsel elicits testimony that is inconsistent with Dr. Silber's statements; and (3) if defense counsel offers evidence that is inconsistent with Dr. Silber's statements. *See United States v. Fifer*, 2006 WL 3368563 at **6 (6th Cir. Nov. 20, 2006):

> the district court did not abuse its discretion by allowing [testimony] about the proffer session or proffer letter, or in admitting FBI Form 302. . . . [Defendant] waived his objections under Fed. R. Evid. 408 and 410 by

signing the proffer letter which stipulated that the Government may use statements made during the proffer session to "[r]ebut any evidence, argument or representations offered by or on behalf of your client in the Government's case-in-chief in connection with the trial[.]"

*See also United States v. Krilich*, 159 F.3d 1020, 1025 (7th Cir. 1998) (introduction of the defendant's statements was proper if either the defendant's testimony, or evidence he presented through the testimony of others – including Government witnesses – contradicted the proffer).

Importantly, the Government can only introduce Dr. Silber's statements, if there is a genuine inconsistency between Dr. Silber's statements and the testimony or evidence offered by defense counsel (i.e, the truth of one must imply the falsity of the other). *See id.* at 1025-26.

If a witness presents unsolicited testimony that is inconsistent with Dr. Silber's statements, defense counsel may move to strike that testimony. If the testimony is stricken, the Government may not introduce Dr. Silber's statements on that issue.

### B. Enforcement of the Federal Rules of Evidence to Prohibit Improper Impeachment of Government Witnesses with Law Enforcement Reports

Fed. R. Evid. 613 says witnesses may be impeached with their own prior statements:

> In examining a witness concerning *a prior statement made by the witness*, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(Emphasis added).

Because FBI Form 302s are summaries of the witness' statements made by law enforcement – not statements made by the witnesses – the Government says defense

3

counsel can cross-examine Government witnesses with their FBI Form 302, but he cannot use them for impeachment purposes – or as substantive evidence – unless the witness adopted the information in the FBI Form 302.

The Court agrees. *See United States v. Little*, 1993 WL 501570 at *9 (6th Cir. Dec. 6, 1993):

> "it would be 'grossly unfair to allow the defense to use statements to impeach a witness which could not be said to be the witness' own rather than the product of an investigator's selections, interpretations, and interpolations.'" Given this rationale, it would serve no purpose to allow a defendant to badger a witness into adopting a writing for the first time at trial, in order to somehow impeach that witness with that writing.

(Citations omitted).

Defense counsel may use the FBI Form 302s for cross examination purposes, and to refresh the witness' recollection. If the witness' testimony is inconsistent with the information in the FBI Form 302s, defense counsel can ask the FBI agents whether the witnesses told them what is written in the FBI Form 302.

Defense counsel may only impeach the witnesses with their FBI Form 302s, if he can lay a foundation that the witness adopted the information in the FBI Form 302s.

Defense counsel may not read information from the FBI Form 302s into the record, nor may he introduce them as exhibits.

### C. Lay Opinion Testimony

The Government intends to introduce lay opinion testimony concerning Dr. Silber.

On February 11, 2010, Magistrate Judge R. Steven Whalen decided whether the Government can introduce lay witness testimony to support an inference that Dr. Silber

4

agreed to defraud the Medicare program.

The Magistrate Judge ruled that:

[T]he government indicates it has no intention of eliciting speculative testimony. It's going to elicit testimony, factual testimony based on conversations, based on the perception of facts and events by the witnesses.

If there's a foundation laid – and that's [] really not an in limine motion, that's a trial motion, if the proper foundation is laid for any testimony, . . . [Judge Roberts] will admit that testimony. If the foundation isn't laid, it will be excluded.

. . .

The witnesses will not be permitted to testify as to any ultimate issue of law in this case. . . . For example, Dr. Silber committed fraud. Dr. Silber knew what was going on. . . . If [the Government is] able to elicit factual testimony that would lead to that conclusion, [it is] certainly free to argue those inferences to the jury.

But the witness, himself or herself, may not testify Dr. Silber knew, in my opinion, what was going on or Dr. Silber committed fraud.

. . .

[T]he witnesses cannot give opinion testimony as to the ultimate conclusions or as to what was in Dr. Silber's mind.

Other than that, I'm not going to prejudice other testimony . . . I'll leave it to the government to lay a proper foundation.

. . .

[W]hat Dr. Silber must have known, what he, you know, what he did know. And I want to be careful not to – and I'm not precluding factual testimony.

. . .

I'm certainly not precluding any conversations that went on. And I'm certainly not precluding testimony from the witnesses as to what they knew.

. . .

I'm not precluding all lay opinion testimony if a proper foundation is laid. What I'm saying is . . . opinion testimony that . . . would merely tell the jury what result to reach, or would elicit a lay opinion as to the ultimate question for the jury . . . – "in my opinion, Dr. Silber committed fraud, in my

5

> opinion Dr. Silber knew this was fraudulent."
>
> . . .
>
> [J]ust let me give you a general example. A witness is involved in this medical clinic operation. . . . Sees things, observes things, has conversations, has had experience at other places, has a factual foundation to say, for example, this wasn't kosher what was going on here, something fishy was going on. Not what Dr. Silber knew, but what these transactions that I was doing were not legitimate in my opinion. That's appropriate.

February 11, 2010 Motion Hearing Transcript, p. 21-26.

The Magistrate Judge's ruling is binding; neither party filed an appeal. Based on this ruling, the Government cannot introduce testimony regarding the ultimate issue of law (e.g., "Dr. Silber committed fraud," "It was obvious to Dr. Silber that the RDM Center was a fraud," "In my opinion, Dr. Silber knew the RDM Center was a fraud," "Dr. Silber had to know that what was going on at the RDM Center was fraudulent.").

Co-Defendant Samuel Mott cannot testify that he believed Dr. Silber only gave him a medical exam to "cover" himself and the clinic, or that he thought Dr. Silber may have been at another fraudulent clinic. Finally, Mott cannot testify about medical exams he had with other doctors.

Co-Defendant Denisse Martinez cannot testify that it was obvious to Dr. Silber that the RDM Center was fraudulent, and Dr. Silber understood that fraud was occurring at the RDM Center.

The Government can introduce: (1) testimony from Dr. Silber's co-Defendants that, in their opinion, the RDM Center was not a legitimate business, and the reasons for these opinions (e.g., a Medicare beneficiary can testify that he reached the opinion that the RDM Center was not a legitimate business); (2) testimony regarding Dr. Silber's

awareness that the RDM Center was not a legitimate business (e.g., Denisse may testify that Dr. Silber approved the use of medication for the RDM Center before any patients were seen or examined); and (3) testimony to support an inference that Dr. Silber participated in the alleged conspiracy to defraud Medicare (e.g., Denisse may testify that Dr. Silber told her he prescribed Vicodin to the patients to keep them coming to the RDM Center).

Before the Government can introduce this lay witness testimony, it must lay a foundation under the Federal Rules of Evidence. *See* Fed. R. Evid. 602:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony.

*See also* Fed. R. Evid. 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

If the Government elicits testimony that supports the ultimate issue of law, it may argue to the jury in closing argument that Dr. Silber knew the RDM Center was not a legitimate business, and he knowingly participated in the conspiracy to defraud Medicare. An attorney's closing argument is not evidence.

### D. Letters from TrustSolutions, LLC

The Government intends to introduce four letters from TrustSolutions, LLC, the agency hired by Medicare to provide proactive reviews and reactive investigations into suspected Medicare fraud, waste, and abuse (the Government abandoned its use of

7

Exhibit B, a letter dated March 26, 2007 to Criminal Investigator Darren Bartnik). *See*
Government Trial Brief, p.26 n.3 ("The proposed exhibits are attached as Exhibits C and
O through Q").

The Government says these letters satisfy the business record exception to the
hearsay rule. *See* Fed. R. Evid. 803(6):

> [A business record is a] memorandum, report, record, or data compilation,
> in any form, of acts, events, conditions, opinions, or diagnoses, made at or
> near the time by, or from information transmitted by, a person with
> knowledge, if kept in the course of a regularly conducted business activity,
> and if it was the regular practice of that business activity to make the
> memorandum, report, record or data compilation, all as shown by the
> testimony of the custodian or other qualified witness, or by certification
> that complies with Rule 902(11), Rule 902(12), or a statute permitting
> certification, unless the source of information or the method or
> circumstances of preparation indicate lack of trustworthiness.

> The Government presents a "Business Record Declaration" from Linda Mann:

> I am a custodian of records for TrustSolutions, LLC. On or about March
> 17, 2010, TrustSolutions, LLC provided to Special Assistant United States
> Attorney, Thomas Beimers, exact copies of the following:

> 1. March 7, 2007 TrustSolutions, LLC request to CMS for
>    implementation of an immediate payment suspension on RDM
>    Center, Inc.
>
> 2. March 8, 2007 TrustSolutions, LLC letter to OIG Agent Darren
>    Bartnik on RDM Center, Inc.
>
> 3. March 21, 2007 TrustSolutions, LLC letter to Mr. Jose Martinez
>    notifying him of the Suspension of Medicare Payments to RDM
>    Center, Inc.
>
> 4. September 13, 2007 TrustSolutions, LLC letter to Mr. Jose Martinez
>    notifying him of the Overpayment Determination and Termination of
>    Payment Suspension on RDM Center, Inc.

> The aforementioned documents are kept by TrustSolutions, LLC in the
> course of the regularly conducted activity and was made by the regularly
> conducted activity as a regular practice and was made at or near the time

of the occurrence of the matters set forth by, or from information
transmitted by, a person with knowledge of those matters.

These letters qualify as business records. As such, they do not violate the Confrontation Clause of the Sixth Amendment. *See United States v. Baker*, 458 F.3d 513, 519 (6th Cir. 2006) ("business records are non-testimonial and therefore do not implicate the Confrontation Clause concerns of *Crawford*.").

In addition, the letters are probative of the elements of the charged offenses that the Government must prove. Defense counsel's objections – that the letters are irrelevant because Dr. Silber does not have billing experience, nor did he know how much the medications cost – go to the weight that the jury will afford the letters, not their admissibility.

## III.    CONCLUSION

Trial will proceed in accordance with this Opinion.

**IT IS ORDERED.**

s/Victoria A. Roberts<br>
Victoria A. Roberts<br>
United States District Judge

Dated:  March 25, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 25, 2010.

s/Linda Vertriest
Deputy Clerk

9